# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BURLIE QUARTMAN, | : | |
| Petitioner, | : | Case No. 3:08CV013 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| TIMMERMAN-COOPER, Warden,<br>London Correctional Institution, | : | |
| | : | |
| Respondent. | | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

Petitioner, Burlie Quartman seeks a writ of habeas corpus pursuant to Title 28 U.S.C. § 2254. This case is presently before the Court upon the Grounds for Relief set forth in Quartman's Petition (Doc. # 2), Respondent's Return of Writ (Doc. # 4), Quartman's Response (Doc. # 5), and the record as a whole.

**I.     PROCEDURAL HISTORY**

**A.     STATE CONVICTION**

On May 20, 2005, an Indictment was issued against Quartman by the Montgomery County Grand Jury charging him with one count of Having a Weapon While Under Disability and one count of Receiving Stolen Property. (Doc. # 4, Exhibit 1). On June 6, 2005, Quartman filed a Motion to Suppress evidence. (Doc. # 4, Exhibits 2 and 3). On August 19, 2005, the trial

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

court held a hearing on the motion. (Doc. # 4, Exhibit 22, Transcript of Hearing). On November 14, 2005, the trial court issued a written decision denying Quartman's Motion to Suppress. (Doc. # 4, Exhibit 5). Thereafter, on January 23, 2006, Quartman entered a plea of no contest to both charges. (Doc. # 4, Exhibits 6 and 7). In a judgment entry filed on February 6, 2006, the trial court sentenced Quartman to one year for Having a Weapon Under Disability and six month for Receiving Stolen Property, to be served concurrently and concurrent to a sentence and conviction of three years in a totally unrelated case. (Doc. # 4, Exhibit 8).

      B.      **DIRECT APPEAL**

Quartman appealed his conviction to the Second District Court of Appeals and raised the following assignments of error:

    1.    THE TRIAL COURT'S FINDINGS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

    2.    THE TRIAL COURT FAILED TO APPLY THE CORRECT LAW TO ITS FINDINGS OF FACT.

On January 26, 2007, the Ohio Court of Appeals rejected Quartman's Assignment of Errors and affirmed his conviction. *State v. Quartman*, 2007 Ohio 329; Ohio App. LEXIS 2267. In doing so, the appellate court made the following factual findings:

> [*P3] One evening, at about 10:00 p.m., in April, 2005, Dayton Police Officer Christopher Smith was dispatched to Quartman's residence, at 425 Brooklyn Avenue, in Dayton, to execute a warrant for Quartman's arrest on a charge of discharging a firearm into a residence. Smith was told to use caution. He knew that Quartman had made a complaint of criminal damaging at that address two weeks earlier, claiming that his Cadillac had been "shot up," and he also knew of an incident in 2002, when two police officers had been dispatched to the residence, and a shot was fired from inside the residence out the front door.
>
> [*P4]  After the officers knocked and announced themselves at the front door, Smith could hear conversations at the back of the house, and he also heard people

running toward the back of the house. Fifteen to thirty minutes after the initial knock-and-announce, another police officer informed Smith that he had seen Quartman "inside the kitchen hunched down, walking around the back kitchen area." At one point, Smith could hear at least three people conversing in a bathroom.

[*P5] About an hour after the initial knock-and-announce, Smith, who had repeatedly called the residence on a cell phone, and left approximately fifteen messages on Quartman's answering machine urging Quartman to respond, finally had the opportunity to talk to Quartman on the phone. After Smith explained his purpose, and expressed a wish to accomplish Quartman's arrest peacefully, Quartman said he would come out after turning some lights off and changing his clothes.

[*P6] Ten minutes later, Quartman not having emerged from the residence, Smith called Quartman again. Again, Quartman said he would come out. Finally, at 11:30, about an hour and a half after the initial knock-and-announce, Quartman came out of the residence. He was handcuffed and positioned standing next to a police cruiser. The door locked behind Quartman, and he was the only person to emerge from the residence. By this time, a SWAT team had been assembled, and the only entrances to the house were covered, so Smith knew that the other occupants of the house were still inside. Smith testified as follows as to what next occurred:

[*P7] "So I went over to Burlie and advised him I knew there was somebody else in the house. He told me his son was still in there. So I asked Burlie if he had keys to the front door. He said yes. I asked him if we could open the front door. He said yes. 'But,' he said, 'I want to call my son inside the residence and ask him to step out.'

[*P8] "So at that point Burlie's in handcuffs. However, we did place a cell phone against his ear. We dialed the number, and he called his - I believe his son, Junior Quartman, whom then come [sic] to the front door and walked out as well as two other individuals.

[*P9] "Q. Once the two individuals and his son are out of the house, what do you or the other officers decide to do?

[*P10] "A. At that point, Lieutenant Chabali [who was in tactical command] requested that the house be checked for anybody else. Therefore, SWAT personnel did enter the house to make sure there was nobody else inside.

[*P11] "Q. So the SWAT personnel wasn't serving a warrant.

[*P12] "A. Correct.

[*P13] "Q. They were clearing the house. Or what do you call that?

[*P14] "A. Basically clearing the house, making sure there's no other persons inside the house.

> [*P15] "Q. What if anything unusual do you learn when SWAT personnel are clearing the house?
>
> [*P16] "A. Once they finished clearing the house, Officer John Zimmerman calls me on the radio, asked me to come upstairs. I went upstairs to an east bedroom, and he points out a Winchester 12-gauge shotgun in plain view laying on top of a dresser. He also points out a two-and-a-half-inch-long glass crack pipe that is laying on the couch - I'm sorry - bed of that bedroom.
>
> [*P17] "Q. Did he indicate to you that it was - stored in that fashion when he first saw it?
>
> [*P18] "A. Yes."

*Id.* at *3-5.

### C. APPEAL TO OHIO SUPREME COURT

On February 16, 2007, Quartman, proceeding *pro se*, filed a Notice of Appeal to the Ohio Supreme Court. (Doc. # 4, Exhibit 19). Therein, Quartman raised the following propositions of law in his Memorandum in Support of Jurisdiction:

1. The trial court's findings are against the manifest weight of the evidence.

2. The trial court failed to apply the correct law to its findings of fact.

(Doc. # 4, Exhibit 20). On May 16, 2007, the Ohio Supreme Court dismissed Quartman's appeal as not involving any substantial constitutional question. (Doc. # 4, Exhibit 21).

### D. FEDERAL HABEAS CORPUS PETITION

On January 18, 2008, Quartman filed the instant habeas corpus petition setting forth the following Grounds for Relief:

1. The Petitioner was denied his Fourth Amendment Rights when evidence, obtained during a warrantless search and non-consensual search of petitioner's residence, was allowed to be admitted after the trial court made an erroneous finding of exigent circumstances and consent, which would justify a warrantless entry into the petitioner's residence, against the manifest weight of the evidence.

4

      2.       The trial court failed to apply the correct law to it's finding of facts at the suppression hearing, thereby making an error by allowing evidence obtained during an illegal search and seizure in violation of Quartman's Fourth Amendment Rights.

(Doc. # 2).

**II.    ANALYSIS**

Respondent asserts that because both of Quartman's claims challenge evidence obtained during a search that he claims was illegal in violation of his Fourth Amendment rights, his claims are not cognizable in this federal habeas proceeding. (Doc. # 4 at 4). This contention is well-taken.

The United States Supreme Court has limited the instances in which a convicted defendant may raise, in a collateral habeas proceeding, claims of Fourth Amendment violations. "In sum, we conclude that where the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037 (1976).

  A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal search and seizure in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied,* 531 U.S. 1089, 121 S. Ct. 808, 148 L. Ed. 2d 694 (2001) (quoting *Riley v. Gray,* 674 F.2d 522 (6th Cir. 1982)).

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment

5

claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. *Riley,* 674 F.2d at 526. Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Quartman presented his Fourth Amendment claim to the trial court, the Ohio Court of Appeals, and the Supreme Court of Ohio. The trial court held a suppression hearing and issued a reasoned opinion on the issue. (Doc. #4, Exhibit 5). Quartman appealed to the Ohio Court of Appeals which found no merit to the claim. *State v. Quartman*, 2007 Ohio 329; Ohio App. LEXIS 2267. With regard to Quartman's Assignment of Errors, the Court of Appeals reasoned as follows:

> [*P24] Both assignments of error are addressed to the suppression proceedings. Essentially, Quartman is contending that the trial court's decision to deny his motion to suppress is both against the manifest weight of the evidence and contrary to law.
>
> [*P25] In that part of the trial court's written decision addressed to the search and seizure issue, the trial court reasoned as follows:
>
> [*P26] "Regarding Branches I and II of the motion, the State has the burden to show an exception to the search warrant requirement of the *Fourth Amendment*. The State advances two (2) grounds constitutionally authorizing a warrantless entry into Defendant's residence.
>
> [*P27] "First, the State argues that Defendant gave verbal consent for the police to enter his residence. Defendant argues there was no consent. Based on this record, the Court finds that Defendant gave consent for the police to enter his residence (Transcript pg. 22). The Defendant, after his arrest outside of the residence, told Officer Smith that the police could open the front door of the locked residence with keys provided by Defendant conditioned upon Defendant's son's prior vacation of the premises. The Court infers consent based upon Defendant's statements and actions.
>
> [*P28] "Second, the State argues that there were exigent circumstances present that authorized entry into Defendant's residence. Defendant argues that the exigency of the situation did not rise to a level permitting the police to enter without a search warrant given the fact that Defendant had exited the house and submitted to his arrest outside of the house.
>
> [*P29] "Upon duly considering the matter, the Court finds exigent circumstances have

been established by the State authorizing entry into the house to check for the presence of other persons and to safeguard police on the scene. The evidence supporting this finding is: (1) On the showing of probable cause demonstrated by the complaint (State's Exhibit 1B), a judge of the Dayton Municipal Court issued an arrest warrant for Defendant for shooting into a habitation, a violent felony involving a firearm. The police could reasonably believe that the Defendant was a violent person and possessed a firearm. (2) Even though Defendant's son and two others exited the house before police went in, the police knew multiple persons were in the house and had no way to know if everyone had vacated. (3) Police knew of a prior SWAT call-out to this residence in 2002 on a family trouble call involving Defendant's girlfriend or wife where a shot had been fired from inside the residence to the outside thereof. (4) Two weeks prior to the date of the subject incident, police had been called out to this residence by Defendant on a criminal damaging call where Defendant's car had been shot up.

[*P30] "Based on the foregoing, the Court finds that the police not only had constitutional authority but had a duty to 'sweep' the residence for the limited reason to assure the safety of others as well as themselves. The 'sweep' conducted by SWAT officers was not pretextural to conduct a general search thereof. See *State v. Kaser (Nov. 3, 1989), Montgomery App. No. 11373, 1989 Ohio App. LEXIS 4114*.

[*P31] "Once lawfully in the residence, the police found in plain view the gun in question. Its seizure was permitted based on the discussion above. Upon checking the serial numbers, the gun was determined to have been stolen.

[*P32] "Accordingly Branches I and II of Defendant's motion are also OVERRULED."

[*P33] With the notable exception of the trial court's finding that Quartman consented to the protective sweep of his residence, we conclude that there is evidence in the record to support all of the findings of the trial court quoted above, and that those findings are not against the manifest weight of the evidence.

[*P34] It is the duty of the State to establish that Quartman consented to the search. Although the issue is close, we conclude that the evidence in this record falls short of establishing that Quartman consented to the protective sweep. It may be that he did, but the evidence in this record does not establish that he did; it merely establishes that he consented to the opening of his front door. We do not agree that it is reasonable to infer, from Quartman's consent that his front door might be opened, that he consented to the protective sweep of his residence. Quartman may have concluded, especially in view of what had transpired in 2002, where police were summoned to the residence and a shot was fired through the door from the inside to the outside, that the police were merely attempting to assure themselves that no one was stationed just inside the door, armed and with hostile intent.

[*P35] With respect to the issue of exigent circumstances, we agree with the trial court that the evidence in the record, which it cited, supports a finding of exigent circumstances, justifying a protective sweep of the house. Although Smith testified that it was his understanding, "based on what Mr. Quartman is telling me," that the only

> occupants of the residence had exited, and that it was then vacant, the police could reasonably distrust the information they received from Quartman. Quartman had not been especially cooperative with the police, given that it took an hour before he deigned to communicate with them.
>
> [*P36]  Given the fact that Quartman was charged with a violent act involving a firearm, for which a magistrate had found probable cause, his reluctance to even talk to the police who came to arrest him, and the 2002 incident in which police officers came to his residence and a shot was fired from the inside of the house through the door, we conclude that the police had sufficient grounds to be concerned that one or more individuals might remain inside the house, armed, and with hostile intent. This justified a protective sweep of the house. *Maryland v. Buie* (1990), 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276.

*Id.* at *6-11.

The Supreme Court of Ohio denied leave to appeal because it was not persuaded to review the issue. (Doc. #4, Exhibit 19).

Quartman has not shown any failure of Ohio's procedural mechanism which prevented him from litigating his Fourth Amendment claim. *See Seymour v. Walker,* 224 F.3d 542, 553 (6th Cir. 2000) ("Seymour does not, and cannot, claim that the State of Ohio did not provide her with a full and fair opportunity to litigate her Fourth Amendment claims; indeed, she did so in a suppression hearing before trial."). Petitioner alleges he lacked a full and fair opportunity to present his Fourth Amendment claim to the state courts because the trial court and the appellate court's legal and factual determinations "are clearly wrong." (Doc. # 5 at 7). However, Quartman has failed to demonstrate that the presentation of his claims was in fact frustrated because of a failure of the State procedural mechanism.

Accordingly, any claim concerning the validity of the search of Quartman's residence is not cognizable on habeas review pursuant to *Stone v. Powell.* Therefore, Quartman's grounds for relief do not warrant federal habeas relief in this matter. Consequently, the state court's holding should not be disturbed on federal review, 28 U.S.C. §2254(d), and this petition should

be dismissed with prejudice. Because reasonable jurists would not disagree with these conclusions, he should be denied permission to appeal *in forma pauperis* and any requested certificate of appealability.

## IT IS THEREFORE RECOMMENDED THAT:

1. Burlie Quartman's Petition for a Writ of Habeas Corpus (Doc. # 2) be DENIED and DISMISSED;

2. A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3. The case be terminated on the docket of this Court.

May 15, 2008

                                         s/ Sharon L. Ovington
                                         Sharon L. Ovington
                                         United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).